1   LATHAM & WATKINS LLP
        Perry J. Viscounty (Bar No. 132143)
2   *perry.viscounty@lw.com*
    140 Scott Drive
3   Menlo Park, California  94025
    (650) 328-4600 / (650) 463-2600 Fax
4
    LATHAM & WATKINS LLP
5       Jennifer L. Barry (Bar No. 228066)
    *jennifer.barry@lw.com*
6   600 West Broadway, Suite 1800
    San Diego, California  92101-3375
7   (619) 236-1234 / (619) 696-7419 Fax

8   Attorneys for Plaintiff
    ENTREPRENEUR MEDIA, INC.
9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12  ENTREPRENEUR MEDIA, INC., a
    California corporation,
13
                        Plaintiff,
14
        v.
15
    CLUE MARKET, INC., a California
16  corporation, EDITH YEUNG, an
    individual, and DOES 1-10,
17
                        Defendants.
18

*ORIGINAL FILED*
*DEC - 6 2011*
*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

E-filing

PSG

Case No.

**CV 11        6140**

COMPLAINT FOR:

(1) **TRADEMARK INFRINGEMENT**
    **(LANHAM ACT, 15 U.S.C. § 1114)**

(2) **UNFAIR COMPETITION/FALSE**
    **DESIGNATION OF ORIGIN**
    **(LANHAM ACT, 15 U.S.C. § 1125(a))**

(3) **CYBERSQUATTING (LANHAM ACT,**
    **15 U.S.C. § 1125(d))**

(4) **UNFAIR COMPETITION**
    **(CAL. BUS. & PROF. CODE § 17200)**

(5) **COMMON LAW TRADEMARK**
    **INFRINGEMENT**

(6) **COMMON LAW UNFAIR**
    **COMPETITION**

(7) **CANCELLATION OF REGISTRATION**

**DEMAND FOR JURY TRIAL**

19

20

21

22

23

24

25

26

27

28

1    Plaintiff Entrepreneur Media, Inc. ("EMI"), for its Complaint against Clue Market, Inc.,

2  Edith Yeung, and Does 1-10 ("Defendants"), alleges as follows:

3                **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

4        1.      This is a civil action alleging trademark infringement, false designation of

5  origin, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a);

6  cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C.

7  § 1125(d); unfair competition under California Business & Professions Code §§ 17200 et seq.;

8  California common law trademark infringement and unfair competition; and cancellation of

9  federal registration pursuant to 15 U.S.C. §§ 1064 and 1119.

10        2.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject

11  matter jurisdiction over EMI's claims for relief for violation of the federal trademark and unfair

12  competition statutes.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction

13  over EMI's state law unfair competition claims, in that the claims are joined with substantial

14  and related claims under the Lanham Act.  This Court also has supplemental jurisdiction over

15  EMI's state law claims pursuant to 28 U.S.C. § 1367(a), in that all of EMI's claims arise out of

16  a common nucleus of operative facts.

17        3.      This Court has personal jurisdiction over Defendants because Defendants reside

18  and maintain offices in this State.

19        4.      Venue in this Court exists under 28 U.S.C. § 1391(b)(1) as Defendants reside in

20  this District.

21        5.      This is an Intellectual Property Action and may be assigned on a district-wide

22  basis pursuant to Civil L.R. 3-2(c).  Alternatively, this case may be assigned to the San

23  Francisco Division, as a substantial part of the events which give rise to the claims alleged

24  below arose in San Francisco County.

25                              **PARTIES**

26        6.      EMI is a California corporation, having its principal place of business at 2445

27  McCabe Way, Irvine, California 92614.

28        7.      On information and belief, Clue Market, Inc. is a California corporation having

1   its principal place of business at 26125 Pierce Rd., Los Gatos, California 95033.  Clue Market

2   is the owner of record for the federal registration for the SFENTREPRENEUR mark.

3        8.     On information and belief, Edith Yeung, an individual residing in San Francisco,

4   California, is the main organizer of the website located at *sfentrepreneur.com*, and the registrant

5   of that domain name.  On information and belief, Yeung was personally aware of, and

6   authorized, approved, ratified, participated in, and instigated the wrongful conduct alleged in

7   this Complaint.

8        9.     EMI is ignorant of the true names of defendants Does 1 through 10, inclusive,

9   and therefore sues those defendants by such fictitious names.  EMI is informed and believes,

10  and on that basis alleges, that defendants Does 1 through 10, inclusive, are responsible for the

11  acts alleged in this Complaint.  When the true names of such fictitious defendants are

12  ascertained, EMI will seek leave of this Court to amend this Complaint to name those

13  individuals or entities.

14       10.    EMI is informed and believes, and on that basis alleges, that each of the

15  Defendants was the agent and employee of the remaining Defendants and, at all times

16  mentioned, acted within the course and scope of such agency and employment.

17                 **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

18              **EMI and Its Successful ENTREPRENEUR® Brand**

19       11.    For over 30 years, EMI (together with its predecessor companies) has published

20  magazines and books which provide editorial content and other information, as well as offer

21  products and services related or of interest to businesses, business owners, and prospective

22  business owners.

23       12.    EMI's longstanding marketing and sales efforts have been conducted primarily

24  under the mark ENTREPRENEUR® (the "ENTREPRENEUR® Mark").

25       13.    EMI is the publisher of ENTREPRENEUR® magazine and other publications

26  incorporating the ENTREPRENEUR® name in their titles.  ENTREPRENEUR® magazine is

27  published monthly with a current paid circulation, including both subscriptions and newsstand

28  sales, of more than 600,000 in the United States.  ENTREPRENEUR® magazine is also sold

1  and distributed in over 100 foreign countries.

2  14.   ENTREPRENEUR® magazine routinely features articles and interviews of some

3  of the biggest names in the entrepreneur community, including Richard Branson, skateboarding

4  icon Tony Hawk, quarterback Drew Brees, and hip hop mogul Russell Simmons:

   

15.   ENTREPRENEUR® magazine also annually publishes, and has continuously

published for over thirty years, the highly anticipated Franchise 500® ranking of America's top

franchises using EMI's top-secret formula:

   

16.   EMI also publishes over 200 book titles under the ENTREPRENEUR® name

and ENTREPRENEUR PRESS® imprint:

  

17.    EMI has recently launched many of its most successful titles as e-books:

 

  

**Start Your Own Child-Care Service (3rd Ed.)**    **Start Your Own Clothing Store and More (3rd Ed.)**    **Start Your Own Retail Business and More**

18.    EMI also conducts seminars, workshops and other educational services geared towards how to successfully start and operate businesses.  These events have included the Sales Success Secrets/Business Success Secrets® Breakfasts sponsored by State Farm Insurance; the Women in Charge Conferences sponsored by OPEN—American Express; the Business Success Secrets® Breakfast Seminars sponsored by Deluxe Corporation and Sprint; the Winning Strategies for Business Conference sponsored by Verizon; and Entrepreneur® Magazine's Growth 2.0 Conferences presented by The UPS Store®:

 



 

19.     EMI operates a number of websites to further disseminate and market its content and services, including *entrepreneur.com*, *EntrepreneurEnEspanol.com*, *YoungEntrepreneur.com*, and *EntrepreneurPress.com*:



20.     The website at *entrepreneur.com* has averaged over 6 million unique visitors and over 52.6 million page views per month, and is ranked in the top 1,100 sites in the United States by Alexa.

21.     EMI has also launched apps for iPhones/ iPads, Android and Blackberry:

22.     EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding relationships have included MSNBC, Reuters, PerfectBusiness.com, Princeton Review (ranking top entrepreneurial schools), Great Place to Work® (annual Best Small & Medium Workplaces rankings), and Palo Alto Software (Entrepreneur® magazine's Business Plan Pro® software):





23.     Through careful cultivation of its various products and services, EMI has

1    developed an outstanding reputation as an innovator in the field of business start-up and

2    strategy and has established an extremely loyal customer following.

3         24.    EMI has received a tremendous amount of public recognition and acclaim for the

4    products sold and services provided under its ENTREPRENEUR® brand.  Through EMI's

5    widespread and continuous use of the ENTREPRENEUR® Mark, the mark has acquired

6    extensive goodwill, has developed a high degree of distinctiveness, and has become famous,

7    well known and recognized as identifying goods and services that originate from EMI.

8         25.    The fame and quality of the products and services bearing the

9    ENTREPRENEUR® Mark have been widely recognized through industry awards and

10   commendations.  ENTREPRENEUR® magazine was a finalist in two categories in Folio's 2010

11   Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four

12   years in "Capell's Circulation Report," and has been honored for its content by receipt of the

13   prestigious Maggie awards in both 2009 and 2010 from the Western Publishing Association.

14   EMI's website at *entrepreneur.com* has been awarded "Outstanding Achievement in Web

15   Development" by the Web Marketing Association, and its Entrepreneur Connect was voted the

16   #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com.  EMI has also received

17   multiple Integrated Marketing Awards from Min Online for its magazine and website.  In

18   addition, both ENTREPRENEUR® magazine and the *entrepreneur.com* website have been

19   named to BtoB magazine's 2010 and 2011 lists of the top 50 media outlets for business-to-

20   business advertising.

21                         **EMI's Intellectual Property Rights**

22        26.    EMI owns, and has obtained United States federal registrations for, the

23   ENTREPRENEUR® Mark, as well as a family of related marks incorporating the term

24   ENTREPRENEUR, as follows:

25   / / /

26

27

28

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely magazines, books and published reports pertaining to business opportunities | 1,453,968 <br><br> August 25, 1987 <br><br> First Use in Commerce: <br><br> May 2, 1978 |
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers and; web advertising services, namely, providing active links to the websites of others | 2,263,883 <br><br> July 27, 1999 <br><br> First Use in Commerce: <br><br> July 1992 |
| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises <br><br> 41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting work shops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning and insurance | 2,502,032 <br><br> October 30, 2001 <br><br> First Use in Commerce: <br><br> Oct. 18, 1991 |
| ENTREPRENEUR.COM | 9:  Downloadable podcasts in the field of business, current events, lifestyle issues, and developments in science and technology <br><br> 35:  Providing business information and advice via a web site on a global computer network <br><br> 38:  Broadcasting programs via a global computer network; and streaming of audio and video material via the Internet; telecommunications services, namely, transmission of podcasts | 3,519,022 <br><br> October 21, 2008 <br><br> First Use in Commerce: <br><br> Sept. 2002 |
| ENTREPRENEUR CONNECT | 42:  Online business networking services in the nature of creating and hosting a community for registered users to create professional profiles, to participate in group discussions, to make business contacts, and to upload onto the website materials promoting their businesses, products and services | 3,652,950 <br><br> July 14, 2009 <br><br> First Use in Commerce: <br><br> April 26, 2008 |

| ENTREPRENEUR ENESPANOL.COM | 35:  Advertising and business services, namely, arranging for the promotion of goods and services of others by means of a global computer network and other computer online service providers; providing business information for the use of customers in the field of starting and operating businesses and permitting customers to obtain information via a global computer network and other computer online service providers; internet advertising services, namely, promoting the goods and services of others by providing  a web site with active links to their websites featuring their goods and services | 3,266,532<br><br>July 17, 2007<br><br>First Use in Commerce:<br><br>Oct. 13, 2006 |
|---|---|---|
| ENTREPRENEUR PRESS | 16:  Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br><br>35:  On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public | 3,470,064<br><br>July 22, 2008<br><br>First Use in Commerce:<br><br>April 1999 |
| ENTREPRENEUR'S STARTUPS | 16:  Paper goods and printed matter; namely, magazines, books, booklets and published reports pertaining to business opportunities | 3,204,899<br><br>February 6, 2007<br><br>First Use in Commerce:<br><br>Jan. 27, 2006 |

27.     The above marks are collectively referred to as the "EMI Marks."  The above registrations are collectively referred to as the "EMI Registrations."

28.     EMI's registration numbers 1,453,968, 2,263,883, and 2,502,032 for ENTREPRENEUR® are incontestable pursuant to 15 U.S.C. § 1065.

29.     The EMI Registrations constitute prima facie evidence that the marks are valid and that EMI is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

30.     EMI also has extensive common law rights in the ENTREPRENEUR® Mark,

1   based on its use of that mark over the last three decades.

2         31.    Through extensive use, marketing, branding and promotion, the

3   ENTREPRENEUR® Mark is well-known and famous, enjoying substantial recognition,

4   goodwill and association with EMI.  The public distinguishes EMI's goods and services from

5   those of other publishers and providers of educational services on the basis of the

6   ENTREPRENEUR® Mark.  The ENTREPRENEUR® Mark is distinctive and has acquired

7   secondary meaning in the United States.

8         32.    The U.S. District Court for the Central District of California held that:

9         •    "The extensive advertising and public recognition over the past 25 years

10   have established [the ENTREPRENEUR® Mark] as a strong mark in the industry."

11         •    The ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of

12   significant protection."

13         •    The ENTREPRENEUR® Mark "has acquired secondary meaning."

14   *Entrepreneur Media, Inc. v. Smith*,  No. CV 98-3607 FMC (CTx), 2004 U.S. Dist. LEXIS 24078,

15   at *9-10, 13 (C.D. Cal. June 23, 2004).

16         33.    The Ninth Circuit reviewed the District Court's findings and affirmed them on

17   appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212, 2004 U.S. App. LEXIS 11567

18   (9th Cir. 2004).

19         **Defendants and Their Unauthorized Use of the EMI Marks**

20         34.    Defendants claim to provide educational, networking, and entrepreneurial services

21   to the San Francisco region through a website entitled SFENTREPRENEUR at

22   *sfentrepreneur.com.*  Specifically, Defendants provide: (i) a weekly newsletter summarizing

23   entrepreneurial news for the San Francisco area; (2) monthly meetings where members pay to

24   hear various speakers discuss specific entrepreneurial or business-related topics; (iii) networking

25   opportunities throughout the San Francisco region; and (iv) a forum for members to hire

26   employees, launch their new products, and share other business related information.

27         35.    Defendants also run a Facebook page (*facebook.com/SFentrepreneur*) and

28   Twitter page (*twitter.com/SFentrepreneur*).

36.    The banner at the top of Defendants' website appears as follows:

**SFentrepreneur**

37.    Defendants have also operated a magazine under the name "SFentrepreneur" that provided the same or similar services.

38.    Defendants own a federal registration (No. 3,559,312, issued January 6, 2009) on the Supplemental Register for the mark SFENTREPRENEUR in Class 35 for "business networking; on-line business networking services," claiming a first use in commerce date of February 2008.  EMI has instituted a cancellation proceeding against this registration concurrently with the filing of this Complaint.

39.    Given EMI's renown, online presence, and networking services via its Entrepreneur Connect site, EMI is very concerned that consumers will be confused into believing that Defendants and their site are endorsed by or affiliated with EMI.  This potential for confusion is heightened by Defendants' choice of red as the distinguishing color for its website and logo, which is the same color used by EMI for its branding.  Defendants will thus enjoy the benefits of EMI's reputation and goodwill based on this consumer confusion, to EMI's detriment.

## EMI is Being Harmed By Defendants'
## Continuing Infringement and Unlawful Conduct

40.    Defendants' continued use of the SFentrepreneur mark in commerce in violation of EMI's valuable intellectual property rights in the EMI Marks is knowing, intentional and willful, and is causing damage to EMI.

41.    Due to Defendants' willful continuing infringement and unlawful conduct, EMI is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights.  EMI had to retain counsel and incur substantial fees and costs (and continues to incur those fees and costs) to prosecute this suit and pursue its claims.

42.    Defendants' activities have caused and will cause irreparable harm to EMI for which it has no adequate remedy at law because Defendants' conduct interferes with EMI's

1   goodwill and customer relationships and will substantially harm EMI's reputation as a source of

2   high quality products, as well as dilute the substantial value of EMI's name and trademarks.

3         43.      EMI's interest in protecting its intellectual property rights, and products and

4   services from customer confusion outweigh any harm to Defendants.  The public interest is best

5   served by granting the requested relief to EMI against Defendants in this cause.

6                               **FIRST CLAIM FOR RELIEF**

7         **Lanham Act - Federal Trademark Infringement - 15 U.S.C. § 1114**

8         44.      EMI incorporates by reference the factual allegations set forth in Paragraphs 11

9   through 43 above.

10        45.      EMI owns the EMI Marks and the EMI Registrations. The trademarks reflected

11  in the EMI Registrations are strong and distinctive, designating EMI as the source of all

12  products and services advertised, marketed, sold or used in connection with the EMI Marks.  In

13  particular, the ENTREPRENEUR® Mark has been used for over 30 years, and has been

14  recognized by a federal district court as a strong and distinctive mark.

15        46.      EMI is the senior user of the EMI Marks, as it began use of the marks in

16  interstate commerce prior to Defendants' first use of the SFENTREPRENEUR mark.

17        47.      Defendants do not have authorization, license or permission from EMI to market

18  and sell their services under the EMI Marks or the ENTREPRENEUR® Mark, which are

19  confusingly similar to the SFENTREPRENEUR mark and closely related to the particular

20  products and services with which the EMI Marks and the ENTREPRENEUR® Mark have come

21  to be associated.

22        48.      Defendants were aware of the EMI Marks and the ENTREPRENEUR® Mark, as

23  Defendants were on constructive notice based on EMI's longstanding federal registrations.

24  Thus Defendants' unauthorized use of EMI's marks was knowing, intentional and willful.

25        49.      As a direct and proximate result of Defendants' wrongful conduct, EMI has been

26  and will continue to be damaged.

27        50.      Defendants' actions thus constitute trademark infringement.

28        51.      Unless an injunction is issued enjoining any continuing or future use of the

1    SFENTREPRENEUR mark by Defendants, such continuing or future use is likely to continue

2    to cause confusion, mistake, or to deceive as to source, origin, affiliation or sponsorship, and

3    thereby to damage EMI irreparably.

4         52.    Defendants' activities have caused and will cause irreparable harm to EMI for

5    which it has no adequate remedy at law, in that: (i) the EMI Marks and the

6    ENTREPRENEUR® Mark comprise unique and valuable property rights that have no readily

7    determinable market value; (ii) Defendants' infringement constitutes interference with EMI's

8    goodwill and customer relationships and will substantially harm EMI's reputation as a source of

9    high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages

10   resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to

11   15 U.S.C. § 1116(a).

12        53.    Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order:  (a) requiring

13   Defendants to account to EMI for any and all profits derived by Defendants from their actions,

14   to be increased in accordance with the applicable provisions of law; and (b) awarding all

15   damages sustained by EMI caused by Defendants' conduct.

16        54.    Defendants' conduct was intentional and without foundation in law, and

17   pursuant to 15 U.S.C. § 1117(a), EMI is as a result entitled to an award of treble damages

18   against Defendants.

19        55.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and

20   EMI is thus entitled to an award of attorneys' fees and costs.

21                          **SECOND CLAIM FOR RELIEF**

22   **Lanham Act - Unfair Competition and False Designation of Origin - 15 U.S.C. § 1125(a)**

23        56.    EMI incorporates by reference the factual allegations set forth in Paragraphs 11

24   through 43 above.

25        57.    The EMI Marks, and in particular the ENTREPRENEUR® Mark, are strong and

26   distinctive, designating EMI as the source of all goods and services advertised, marketed, sold

27   or used in connection with those marks.  In addition, by virtue of EMI's decades-long use of the

28   ENTREPRENEUR® Mark in connection with its products and services, and its extensive

1    marketing, advertising, promotion and sale of its products and services under that mark, the

2    EMI Marks, and in particular the ENTREPRENEUR® Mark, have acquired secondary meaning,

3    whereby the consuming public of this District, the State of California and throughout the United

4    States, associates the EMI Marks with a single source of products and services.

5         58.    EMI is the senior user of the EMI Marks, as it began use of the marks in

6    interstate commerce prior to Defendants' first use of the SFENTREPRENEUR mark.

7         59.    Defendants were aware of the EMI Marks and the ENTREPRENEUR® Mark, as

8    Defendants were on constructive notice based on EMI's longstanding federal registrations.

9         60.    On information and belief, through their use of the confusingly similar

10   SFENTREPRENEUR mark, Defendants intended to, and did in fact, confuse and mislead

11   consumers, and did misrepresent and create the false impression that EMI somehow authorized,

12   originated, sponsored, approved, licensed or participated in Defendants' use of the confusingly

13   similar SFENTREPRENEUR mark.

14        61.    In fact, there is no connection, association or licensing relationship between EMI

15   and Defendants, nor has EMI ever authorized, licensed or given permission to Defendants to

16   use the EMI Marks in any manner whatsoever.

17        62.    On information and belief, Defendants' use of the SFENTREPRENEUR mark is

18   likely to cause confusion as to the origin and authenticity of Defendants' website and related

19   products/services and is likely to cause others to believe that there is a relationship between

20   Defendants and EMI.

21        63.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been

22   and will continue to be damaged.

23        64.    Defendants' actions thus constitute false designation of origin and unfair

24   competition.

25        65.    Defendants' activities have caused and will cause irreparable harm to EMI for

26   which it has no adequate remedy at law, in that: (i) the EMI Marks and the

27   ENTREPRENEUR® Mark comprise unique and valuable property rights that have no readily

28   determinable market value; (ii) Defendants' infringement constitutes interference with EMI's

1    goodwill and customer relationships and will substantially harm EMI's reputation as a source of

2    high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages

3    resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to

4    15 U.S.C. § 1116(a).

5          66.    Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order:  (a) requiring

6    Defendants to account to EMI for any and all profits derived by Defendants from their actions,

7    to be increased in accordance with the applicable provisions of law; and (b) awarding all

8    damages sustained by EMI caused by Defendants' conduct.

9          67.    Defendants' conduct was intentional and without foundation in law, and

10   pursuant to 15 U.S.C. § 1117(a), EMI is as a result entitled to an award of treble damages

11   against Defendants.

12         68.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and

13   EMI is thus entitled to an award of attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Anticybersquatting Consumer Protection Act - 15 U.S.C. § 1125(d)

16         69.    EMI incorporates by reference the factual allegations set forth in Paragraphs 11

17   through 43 above.

18         70.    EMI is the owner of the EMI Marks and the ENTREPRENEUR® Mark, as well

19   as the EMI Trademark Registrations.

20         71.    Defendants have a bad faith intent to profit from the EMI Marks and the

21   ENTREPRENEUR® Mark.

22         72.    On information and belief, Defendants are using domain names that are identical

23   or confusingly similar to the EMI Marks and the ENTREPRENEUR® Mark, including, but not

24   limited to, *SFentrepreneur.com*.

25         73.    Through use of these domain names, Defendants intend to divert consumers

26   from EMI's websites to Defendants' websites to sell unauthorized informational and

27   networking services that will harm the goodwill represented by the EMI Marks, for commercial

28   gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or

1    endorsement of the sites.

2        74.    Unless an injunction is issued enjoining any continuing or future use of the EMI

3    Marks and the ENTREPRENEUR® Mark in domain names by Defendants, such continuing or

4    future use is likely to continue to cause confusion, mistake or to deceive as to source, origin,

5    affiliation, or sponsorship, and thereby to damage EMI irreparably.  EMI has no adequate

6    remedy at law.

7        75.    EMI is also entitled to a transfer of all of Defendants' infringing domain names

8    pursuant to 15 U.S.C. § 1125(d)(1)(C).

9        76.    Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order:  (a) requiring

10   Defendants to account to EMI for any and all profits derived by Defendants from their actions,

11   to be increased in accordance with the applicable provisions of law; and (b) awarding all

12   damages sustained by EMI caused by Defendants' conduct.

13       77.    Defendants' conduct was intentional and without foundation in law, and,

14   pursuant to 15 U.S.C. § 1117(a), EMI is as a result entitled to an award of treble damages

15   against Defendants.

16       78.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and

17   EMI is thus entitled to an award of attorneys' fees and costs.

18       79.    Alternatively, EMI is entitled to elect statutory damages instead of actual

19   damages and profits, pursuant to 15 U.S.C. § 1117(d).

20                    **FOURTH CLAIM FOR RELIEF**

21   **Unfair Competition – California Business & Professions Code §§ 17200 _et seq_.**

22       80.    EMI incorporates by reference the factual allegations set forth in Paragraphs 11

23   through 43 above.

24       81.    The above-described acts and practices by Defendants are likely to confuse,

25   mislead or deceive the general public and therefore constitute unfair and fraudulent business

26   practices in violation of California Business & Professions Code §§ 17200, _et seq_.

27       82.    The above-described acts further constitute business acts that violate Sections 32

28   and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and are therefore unlawful.

1    83.    The above-described acts further constitute business acts that violate the

2    Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and are therefore unlawful.

3    84.    The unfair, unlawful, and fraudulent business practices of Defendants described

4    above present a continuing threat and are meant to deceive members of the public.

5    85.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been

6    injured in fact and has lost money and profits, and has suffered injury to its reputation and

7    goodwill.  Such harm will continue unless Defendants' acts are enjoined by the Court.  EMI has

8    no adequate remedy at law.  Accordingly, EMI is entitled to an injunction prohibiting

9    Defendants from continuing the practices described above.

10                        **FIFTH CLAIM FOR RELIEF**

11                      **Common Law Trademark Infringement**

12    86.    EMI incorporates by reference the factual allegations set forth in Paragraphs 11

13    through 43 above.

14    87.    EMI has valid and protectable common law rights in the EMI Marks.

15    88.    EMI is the senior user of the EMI Marks.

16    89.    Defendants' conduct, as described above, constitutes infringement of EMI's

17    common law rights in the EMI Marks.

18    90.    Defendants' use of the EMI Marks on unauthorized services is likely to cause

19    confusion as to the origin of Defendants' services and is likely to cause others to believe that

20    there is a relationship between Defendants and EMI.

21    91.    Defendants' wrongful acts have permitted and will permit them to receive

22    substantial profits based upon the strength of the reputation of EMI and the substantial goodwill

23    it has built up in the EMI Marks.

24    92.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been

25    and will continue to be damaged.

26    93.    Unless an injunction is issued enjoining any continuing or future use of the EMI

27    Marks, such continuing or future use is likely to continue to cause confusion and thereby to

28    damage EMI irreparably.  EMI has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

### Common Law Unfair Competition

94.     EMI incorporates by reference the factual allegations set forth in Paragraphs 11 through 43 above.

95.     EMI has expended significant time and expense in developing the EMI Marks and the high-quality products and services it markets and sells under those marks. The EMI Marks have been very successful and have developed a substantial reputation and goodwill in the marketplace.

96.     Through their actions as described above, Defendants have misappropriated EMI's efforts and are exploiting the EMI Marks and EMI's reputation to market and sell their services under the SFENTREPRENEUR mark. These actions constitute unfair competition.

97.     As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

98.     Unless an injunction is issued enjoining Defendants' unfairly competitive conduct, EMI will continue to be damaged irreparably. EMI has no adequate remedy at law.

99.     On information and belief, Defendants have acted willfully, intentionally and maliciously, such that EMI is entitled to punitive damages.

## SEVENTH CLAIM FOR RELIEF

### Cancellation of Registration under 15 U.S.C. §§ 1064 and 1119

100.     EMI incorporates by reference the factual allegations set forth in Paragraphs 11 through 43 above.

101.     Defendants currently own a registration for the SFENTREPRENEUR mark on the Supplemental Register.

102.     The SFENTREPRENEUR mark so resembles EMI's registered ENTREPRENEUR® Mark and EMI Marks as to be likely, when used in connection with Defendants' services, to cause confusion, or to cause mistake, or to deceive.

103.     EMI is being, and will continue to be, damaged by the registration of the SFENTREPRENEUR mark, including as a result of confusion with and dilution of the

1  ENTREPRENEUR® Mark and EMI Marks.

2      104.    Accordingly, pursuant to Section 37 of the Lanham Act, EMI requests that the

3  Court order the cancellation of the registration, and certify such order to the Director of the

4  Patent and Trademark Office to make the appropriate entry upon the records of that Office.

5  **PRAYER FOR RELIEF**

6      WHEREFORE, EMI prays for the following relief:

7      A.    An injunction ordering Defendants, and their officers, directors, members, agents,

8  servants, employees, and attorneys, and all other persons acting in concert or participating with

9  them, who receive actual notice of the injunction order by personal or other service, to:

10      1.    Cease all use and never use the SFENTREPRENEUR mark, the EMI

11  Marks, or any other mark likely to cause confusion with the EMI Marks, in connection with the

12  promotion, advertising, offering for sale, or sale, of any products or services;

13      2.    Never use any false designation of origin, false representation, or any false

14  or misleading description of fact, that can, or is likely to, lead the consuming public or individual

15  members thereof, to believe that any products or services produced, offered, promoted,

16  marketed, advertised, provided or sold by Defendants are in any manner associated or connected

17  with EMI, or are licensed, approved or authorized in any way by EMI;

18      3.    Never represent, suggest in any fashion to any third party, or perform any

19  act that may give rise to the belief, that Defendants, or any of their goods or services, are related

20  to, authorized or sponsored by EMI;

21      4.    Cease all use of the domain name *sfentrepreneur.com* and any similar

22  domain names, and never register any domain names that contain any of the EMI Marks, or any

23  domain names confusingly similar to any of the EMI Marks;

24      5.    Never unfairly compete with EMI in any manner whatsoever, or engage in

25  any unfair, fraudulent or deceptive business practices that relate in any way to the production,

26  distribution, marketing, and/or sale of products and services bearing any of the EMI Marks; and

27      6.    Never apply for, or seek to register, the SFENTREPRENEUR mark or any

28  mark that is likely to cause confusion with any of the EMI Marks.

1    B.    An order pursuant to 15 U.S.C. § 1116(a) directing Defendants to file with the

2    Court and serve upon EMI's counsel, within thirty (30) days after service of the order of

3    injunction, a report in writing under oath setting forth in detail the manner and form in which

4    Defendants have complied with the injunction.

5    C.    An order transferring all domain names, including but not limited to

6    *sfentrepreneur.com*, in Defendants' possession, custody or control that include the word

7    "entrepreneur," any misspelling thereof, or are otherwise confusingly similar to or contain any of

8    the EMI Marks.

9    D.    An order finding that, by the acts complained of above, Defendants have infringed

10   EMI's federally registered trademarks in violation of 15 U.S.C. § 1114.

11   E.    An order finding that, by the acts complained of above, Defendants have created a

12   false designation of origin and false representation of association, in violation of 15 U.S.C.

13   § 1125(a).

14   F.    An order finding that, by the acts complained of above, Defendants have engaged

15   in cybersquatting, in violation of 15 U.S.C. § 1125(d).

16   G.    An order finding that, by the acts complained of above, Defendants have engaged

17   in unfair competition and acts of unfair and deceptive business practices in violation of

18   California Business & Professions Code §§ 17200 *et seq*.

19   H.    An order finding that, by the acts complained of above, Defendants have engaged

20   in common law trademark infringement.

21   I.    An order finding that, by the acts complained of above, Defendants have engaged

22   in common law unfair competition.

23   J.    An order cancelling Defendants' federal registration for SFENTREPRENEUR,

24   and directing the Director of the Patent and Trademark Office to remove such registration from

25   the Supplemental Register.

26   K.    An order pursuant to 15 U.S.C. § 1117(a) compelling Defendants to account to

27   EMI for any and all profits derived by them from their unlawful and infringing conduct.

28   L.    An order awarding EMI damages as follows:

1            1.      Pursuant to 15 U.S.C. § 1117(a), EMI's actual damages, as well as all of

2 Defendants' profits or gains of any kind from their acts of trademark infringement, false

3 designation of origin, cybersquatting, and unfair competition, including a trebling of those

4 damages;

5            2.      At EMI's election, the maximum allowable amount of statutory damages

6 permitted under 15 U.S.C. § 1117(d) for Defendants' acts of cybersquatting; and

7            3.      Punitive damages pursuant to California common law.

8      M.      An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case

9 and awarding EMI its reasonable attorneys' fees.

10      N.      An order awarding EMI all of its costs, disbursements and other expenses

11 incurred due to Defendants' unlawful conduct, pursuant to 15 U.S.C. § 1117(a).

12      O.      An order awarding EMI interest.

13      P.      An order awarding EMI such other relief as the Court deems appropriate.

14 Dated: December 6, 2011                LATHAM & WATKINS LLP

15

16                        By: _____
                               Perry J. Viscounty

17                                Jennifer L. Barry

18                              Attorneys for Plaintiff
                             ENTREPRENEUR MEDIA, INC.

19                   **JURY DEMAND**

20      Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 3-6, Plaintiff

21 demands a trial by jury.

22 Dated: December 6, 2011                LATHAM & WATKINS LLP

23

24                        By: _____
                               Perry J. Viscounty

25                                Jennifer L. Barry

26                              Attorneys for Plaintiff
                             ENTREPRENEUR MEDIA, INC.

27

28